313 N.E.2d 351 (1974)
Wilbert Lee BALLARD, Plaintiff-Appellant,
v.
BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF EVANSVILLE, Indiana, Defendant-Appellee.
No. 1-873A139.
Court of Appeals of Indiana, First District.
June 25, 1974.
Rehearing Denied August 9, 1974.
*352 John D. Clouse, Evansville, for plaintiff-appellant.
John C. Cox, Evansville, for defendant-appellee.
LYBROOK, Judge.
Plaintiff-appellant Ballard brought an action for restoration of his policeman's pension which had been terminated by defendant-appellee Board due to his conviction of a felony. From a judgment in favor of the appellee, Ballard appeals.
Ballard challenges the constitutionality of the termination of his benefits pursuant to IC 1971, XX-X-XX-X, Ind. Ann. Stat. § 48-6405 (Burns 1963), which provides:
"Whenever any person who shall have received any benefit from such fund shall be convicted of a felony or shall become an habitual drunkard or shall fail to report himself for duty or for examination, or otherwise shall fail to comply with any legal requirements imposed by the board of trustees of the police pension fund, said board may upon notice to any such person discontinue or reduce in its discretion any payments that might otherwise accrue thereafter: Provided, however, That nothing contained in this act [§§ 48-6401-48-6406] shall be construed to entitle said board to recall into service any member who has previously been retired from active service on account of having served twenty [20] years or more; nor shall anything in this act be construed to entitle a retired member to a pension after *353 he shall have been convicted of a felony, or shall have become an habitual drunkard. [Acts 1925, ch. 51, § 5, p. 167.]"
The issue was presented to the court upon the following stipulation of fact by the parties:
"Come now the parties by counsel and stipulate and agree that the following facts are true and that this stipulation may be used upon the trial of this cause, both parties, however, reserving the right to introduce other evidence, said stipulation being as follows, to-wit:
1. The plaintiff, Wilbert Lee Ballard, was, prior to his retirement as set out hereinafter, a member of the Police Department of the City of Evansville, Indiana.
2. That the defendant, Board of Trustees of the Police Pension Fund of the City of Evansville, Indiana, is the legal entity charged with the ownership, trusteeship, and maintenance of the Police Pension Fund of the Police Department of the City of Evansville, Indiana.
3. That the plaintiff, Wilbert Lee Ballard, was permanently injured in an on-duty accident when serving with the Evansville Police Department, and, thereafter, in November of 1967, was retired from said department on a disability pension, administered by the Board of Trustees of the Pension Fund of the City of Evansville, Indiana.
4. That, thereafter, the said Wilbert Lee Ballard regularly drew said pension until the same was terminated and cancelled as set out hereinafter.
5. That on the 14th day of August, 1970 the said Wilbert Lee Ballard was convicted of second degree murder in the Superior Court for Pima County. Tuscon, Arizona. That second degree murder is, and was at said time, a felony according to the laws of the State of Arizona.
6. That, thereafter, on August 16, 1970, the defendant Board of Trustees discontinued paying to the said Wilbert Lee Ballard his pension benefits solely because of said conviction.
7. That at the time said pension was discontinued and cancelled, the said Wilbert Lee Ballard was drawing the sum of $322.50 per month in pension benefits from the defendant, and said pension was payble [sic] at said rate per month until the year of 1971 when it would have been increased to the sum of $343.64 per month, at which rate it was payable until the year of 1972 at which time it would have been increased to the sum of $353.74 per month."

I.
Resolution of the issues presented in this cause necessitates an examination of the nature of the rights, if any, which an officer acquires through participation in the Police Pension Fund.[1]
The fund is derived from several sources, including contributions by police officers during the course of their employment. It is the character of these contributions by the members of the force which is of controlling significance for purposes of this appeal, since courts have traditionally drawn a distinction between voluntary and involuntary plans.
Participation in the pension plan with which we are concerned is clearly involuntary. Every member of the police force is liable to the payment of assessments into the fund and is conclusively deemed to have agreed that enforced contributions may be deducted from his salary. IC 1971, 19-1-24-2, Ind. Ann. Stat. § 48-6402 (Burns 1973 Cum.Supp.).
According to the great weight of authority and the law of this State, involuntary *354 plans are mere gratuities involving no agreement of the parties. The pension has been characterized as a bounty springing from the appreciation and graciousness of the sovereign. Accordingly, it may be given, withheld, distributed or recalled at the sovereign's pleasure. While the contributions made by the employee are commonly designated as compensation, he neither receives nor controls them. Since the individual cannot prevent appropriation of his contributions to the fund, he lacks the power of disposition which accompanies ownership of property. Since he completely lacks control over or right to the monies appropriated, it has been theorized that the payments into the fund are not in fact personal contributions. Herein lies the distinguishing factor between voluntary and involuntary contribution systems. Under a voluntary plan the employee theoretically receives the money then turns it back to the fund. In effect, the money becomes private means and is then contributed. Conversely, under an involuntary plan it is considered that the monies are never actually segregated from public funds. The end result is that no vested rights are acquired in the fund by the employee under an involuntary plan. Kern v. State ex rel. Bess (1937), 212 Ind. 611, 10 N.E.2d 915, citing Pennie v. Reis (1889), 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Jensen v. Pritchard (1950), 120 Ind. App. 439, 90 N.E.2d 518, citing Raines v. Board of Trustees Pen. Fund (1937), 365 Ill. 610, 7 N.E.2d 489.
In Klamm v. State ex rel. Carlson (1955), 235 Ind. 289, 126 N.E.2d 487, our Supreme Court reiterated the concepts that pensions under an enforced or compulsory contribution plan are gratuities, involving no agreement of the parties and creating no vested rights. However, the court went on to say:
"Where the statutory conditions for retirement existing when the application is made have been met, and the award of the pension has been made, or as of right should have been made, the pensioner's interest becomes vested and takes on the attributes of a contract, which, in the absence of statutory reservations, may not legally be diminished or otherwise adversely affected by subsequent legislation. Pennie v. Reis, 1889, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426, supra; Freyermuth v. State ex rel. Pinter, 1939, 215 Ind. 693, 21 N.E.2d 707; Roddy v. Valentine, 1935, 268 N.Y. 228, 197 N.E. 260, supra; Klench v. Board of Pension Fund Com'rs., 1926, 79 Cal. App. 171, 249 P. 46; State ex rel., v. Trustees, 1948, 149 Ohio St. 477, 79 N.E.2d 316; Id., 150 Ohio St. 377, 82 N.E.2d 743."
Upon the above authority Ballard argues that upon retirement he acquired a vested contractual right to the payment of his pension. Appellee, on the other hand, insists that the pensioner's right is merely statutory, rather than contractual in nature.
The language employed being somewhat less than definite, we have examined the cases cited by the Klamm court as authority for the above statement. State ex rel. v. Trustees, supra, involved constructions by the Ohio Supreme Court of certain legislative amendments to the state pension plans for firemen and policemen. The statutes generally provided that the granting of a pension to an eligible beneficiary would operate to vest a right in that person to receive such pension at the rate fixed at the time of the granting for so long as he remains a beneficiary.
In considering the nature of the right acquired by the pensioner, the court reasoned:
"Doubtless the considerations outlined just above were responsible, in a measure at least, for the enactment of the `vested right' statutes, and the effect of those statutes is to make the engagement of public authorities to pay a pension, upon conditions fulfilled, a contractual obligation founded upon a valid consideration, giving to the pensioner a vested *355 right in his pension which cannot afterward be impaired or revoked.
The cases of Retirement Board of Allegheny County v. McGovern et al. Com'rs, 316 Pa. 161, 169, 174 A. 400, 404 and David v. Veitscher Magnesitwerke Actien Gesellschaft, 348 Pa. 335, 346, 35 A.2d 346, 351, are authority for the proposition that, `until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived; it has ripened into a full contractual obligation.'" (Emphasis supplied.)
On the basis of Klamm, supra, and the above cited authority, we must conclude that upon retirement Ballard acquired a vested contractual right to the payment of his pension. It is in this context that we must consider the purported authority to terminate his pension benefits pursuant to Burns § 48-6405, supra.

II.
Appellant argues that termination of his pension was violative of Art. 1, § 30 of the Indiana Constitution, which provides:
"No conviction shall work corruption of blood, or forfeiture of estate."
In support of his argument, Ballard relies heavily on Leonard v. City of Seattle (1972), 81 Wash.2d 479, 503 P.2d 741, wherein a retired police officer successfully challenged the discontinuance of his pension following a felony conviction. The Washington Supreme Court concluded that as applied in the officer's circumstances, a statutory provision strikingly similar to Burns § 48-6405[2] had operated to work a forfeiture of his estate in derogation of the State Constitution.[3]
The thrust of the court's reasoning appears in the following excerpts from the text of the opinion:
"We accept the city's contention to the extent that the retirement pension is contractual in nature; but that does not mean that once vested the right to the pension does not constitute a part of the recipient's estate. That the retirement pension arises out of a contract of employment does not deprive it of the characteristics of property, but rather imparts to it that very characteristic by removing it from the status of a gratuity, mere expectancy, or simply a promise enforceable ultimately by no more than a judgment for damages.
* * * * * *
"... As fully ripened, plaintiff's pension constituted property  the present right to payment of his deferred compensation. When his rights to the pension fully vested, he acquired enforceable rights to funds under the control of the trustees according to his contract, and these rights thus finally vested constituted property not to be divested or defeated by means or for other reasons or on different grounds than those upon which any other kind of property could be alienated or defeated.
* * * * * *
"We must, therefore, conclude that plaintiff's right to a pension vested completely on his retirement; that, although these rights had developed in a continuing process of vesting through a continuing contract of employment in the public service and were contractual in nature, they completely vested upon his retirement; that, having fully vested upon his retirement; they constituted valuable property of his estate; and that to take this property away from him as a consequence of his conviction of a felony after fully vesting would unconstitutionally work a forfeiture of estate prohibited *356 by Const. art. 1, § 15, for conviction of a crime."
Concededly, the Washington decisions reflect a theoretical approach to the concept of pension rights which differs somewhat from that employed by the courts of this State. In that State, pension rights begin to vest upon the commencement of employment or service and continue to vest under the then applicable legislation until retirement requirements are met. Leonard, supra, citing Bowen v. Statewide City Employees Retirement System (1967), 72 Wash.2d 397, 433 P.2d 150.
Such an approach conflicts with the general rule in this State that an employee acquires no vested rights in the pension fund during the period of his employment. Kern v. State ex rel. Bess, supra; Jensen v. Pritchard, supra; Klamm v. State ex rel. Carlson, supra. As we have demonstrated, however, it is clear from Klamm and the authority upon which it relies that once the statutory conditions for retirement have been satisfied, the retiree acquires a vested contractual right to the payment of his pension. From that point in time, the Indiana pensioner would not appear to stand in a position any different from that of his Washington counterpart.
Appellee Board directs our attention to Salley v. Firemen's and Policemen's Pension Fund Commission (1940), 124 N.J.L. 79, 11 A.2d 244. In that case, a retired police officer receiving pension payments was convicted of a felony and sentenced to a prison term. During his incarceration, the New Jersey legislature enacted a statute providing for the suspension of pension payments during confinement in a penal institution as a result of conviction of a crime involving moral turpitude. The State Supreme Court affirmed a denial of recovery by the officer's assignee of the pension payments withheld.
Salley, however, is inapplicable to the case at bar since the court specifically declined to find any contractual or vested right between the government and the pensioner.
In our opinion, Leonard v. City of Seattle, supra, provides appropriate guidance in the resolution of the issue with which we are confronted. Upon his retirement from the police force and the award of his pension, appellant Ballard clearly acquired a vested contractual right to the payment of his pension. It would appear an inescapable conclusion that this right possesses the characteristics of property, and, as such constitutes a part of his estate.
It cannot be doubted that this vested right may be subject to various valid statutory reservations. However, we are constrained to hold that the termination of Ballard's pension payments through application of the particular statutory reservation found in Burns § 48-6405 has worked a forfeiture of his estate in violation of Art. 1, § 30 of the Indiana Constitution.
We reach this result fully cognizant of and in sympathy with the State's interest in assuring that those who are charged with the enforcement of our laws continue to exemplify that standard of moral character which commands the respect of those persons whom they serve. It is, however, a principle basic to our system of justice that a man may not be deprived of his estate and, hence, his heirs deprived of their inheritance, by reason of a criminal conviction. Our Constitution permits no lesser standard of protection for a public servant than for any other individual.
Having reached this conclusion, it is not necessary that we consider any other contention of error presented by appellant in this appeal.
Cause reversed and remanded with instructions to the trial court to enter judgment for plaintiff restoring his pension and granting those benefits accumulated since the termination thereof.
ROBERTSON, P.J., and LOWDERMILK, J., concur.
NOTES
[1] IC 1971, 19-1-24-1 - XX-X-XX-XX, Ind. Ann. Stat. §§ 48-6401 - 48-6455 (Burns 1963, 1973 Cum.Supp.).
[2] Rev.Code Wash.Ann. 41.20.110.
[3] Wash.Const. Art. 1, § 15.